

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. L. A. Woods
State Superintendent of
Public Instruction
Austin, Texas

Opinion No. O-897
Re: Reconsideration of Opinion No.
O-1944, concerning the granting of
salary aid under House Bill No. 933,
Acts 46th Legislature.

Dear Sir:

We are in receipt of your letter of March 7, 1949, re-questing that we reconsider our Opinion No. O-1944, addressed to the Honorable Olan R. Van Zandt, Chairman of the Joint Legisla-tive Advisory Committee. In that opinion we reuled that the State Superintendent of Public Instruction and the Joint Legis-lative Advisory Committee did not have authority under the pro-visions of House Bill No. 933, Acts 46th Legislature, to direct applicants for rural aid under such Act, to omit receipts from the State per capita apportionment which they would receive for pupils transferred into the school district from a district in-eligible to receive aid under Section 6 of the Act, in showing the budgeted receipts of the receiving district under Section 13.

You suggest that inequities and hardships to school districts will result under our construction of the Act, and state that: "In many instances the number of pupils transfer-ring into State aid schools make it absolutely essential that extra teachers be employed to take care of this influx."

The questions raised in your present request were con-sidered in our original opinion, and it was pointed out that the Legislature had provided for adjusting such hardships or in-equities as might arise. In that opinion, we stated:

"If this construction works a hardship upon the school receiving such ineligible transfers, such result does not justify a disregard of the statute. The wisdom of the stat-ute is for the Legislature. Besides, other provisions of the Act may take care of such situation. We refer espec-ially to that provision contained in Section 4 'that where unusual or extraordinary conditions cause an actual in-crease in enrollment, an adjustment as to the number of teachers may be made by the State Superintendent on approv-al of said Joint Legislative Advisory Committee not to ex-ceed the teacher-pupil load provided herein.'"

Section 4 of House Bill No. 933, Acts 46th Legislature, reads as follows:

"Sec. 4. (Teacher-Pupil Load.)--State aid under provisions of this Act shall be allotted upon the basis of one (1) teacher for any number of scholastics from twenty (20) to thirty-five (35) and one (1) additional teacher for each additional thirty (30) scholastics, or fractional part thereof residing in the district. It is expressly provided that in the event pupils are transferred into the district the excess fractional part thereof shall not be less than two (2) scholastics. The basis for calculation shall be the net scholastic enumeration of white or colored race, as the case may be, including the transfers into the district, and excluding the transfers out of the district, provided such transfers are from the districts eligible to receive aid under Section 6 of this Act, for the current year; and there shall be deducted all scholastics who have completed the course of study in their home school, as authorized by the county board of trustees, provided that where unusual or extraordinary conditions cause an actual increase in enrollment, an adjustment as to the number of teachers may be made by the State Superintendent on approval of said Joint Legislative Advisory Committee not to exceed the teacher-pupil load provided herein. A condition of unusual enrollment may be said to exist when and if the average daily attendance of a school reaches a point in excess of the net scholastics remaining in the district after transfer. Under no conditions shall aid be granted for teachers in excess of the teacher-pupil load based on the average daily attendance, for a period of at least five (5) consecutive months; provided further that under no condition shall aid be granted any district in excess of the number of teachers actually contracted for and employed as authorized herein, and shall also be authorized to increase the teacher-pupil load from thirty (30) to forty (40) after the employment of the fifteenth teacher on the teacher-pupil load provided herein, and shall further be authorized, if deemed advisable, to place all schedules of payment for the last year of the biennium on the net scholastics for such school districts for the year preceding."

The teacher-pupil load is one teacher for any number of scholastics from twenty (20) to thirty-five (35) and one (1) additional teacher for each additional thirty (30) scholastics or fractional part thereof. The Act then directs the method for calculating the net scholastics within the district for determining the number of teachers which may be set up in the budgeted expenditures of the district under Section 13. This is based

upon the scholastic census, transfers in and out of a district and scholastics who have completed their course of study in their home school.  Under Section 5, the school district is not disqualified from receiving salary aid determined in this method unless the average daily attendance is less than sixty-five (65) per cent of the scholastic census enrollment.

The Section then provides, that the State Superintendent and Joint Legislative Advisory Committee may adjust the number of teachers where unusual or extraordinary conditions caused are by an actual increase in enrollment provided however that the number of teachers shall not exceed the teacher-pupil load therein provided.  "A condition of unusual enrollment may be said to exist when and if the average daily attendance of a school reaches a point in excess of the net scholastics remaining in the district after transfer."  Here we find a specific provision authorizing the State Superintendent and Joint Legislative Advisory Committee to allow additional teachers when there is an actual increase in enrollment and the average daily attendance is greater than the number of the net scholastics apportioned to the district based upon the scholastic census and transfer record, if such increase is sufficient to warrant additional teachers and create an unusual or extraordinary condition.  The disqualification that the number of teachers allowed under this provision shall not exceed the teacher-pupil load refers to a calculation of teacher-pupil load based upon average daily attendance and not upon the census and transfer records.  Any other construction would render the "unusual or extraordinary conditions" portion of the Section without any significance or meaning whatsoever, since the school district would already be entitled to the full number of teachers calculated upon the basis of the census and transfer records without any reference to unusual or extraordinary conditions.

We adhere to the conclusions expressed in our original Opinion No. O-1944, and are of the opinion that the inequities and hardships to which you refer should be adjusted in the manner provided by the Legislature and in accordance with the provisions of Section 4 of House Bill No. 933, Acts 46th Legislature.

APPROVED MAR 18, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
APPROVED: OPINION COMMITTEE
BY:          BWB, CHAIRMAN.

Yours very truly
ATTORNEY GENERAL OF TEXAS
By /s/ Cecil C. Cammack
Cecil C. Cammack, Assistant

CCC:RS:wb